UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MONA LARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 1:13-cv-1727 |
| | ) | |
| AMERICAN MOLD EXPERTS, INC. and | ) | |
| AMERICAN MOLD EXPERTS, INC. | ) | |
| EMPLOYEE HEALTH  BENEFIT PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW, the Plaintiff, Mona Larrison, by and through the undersigned

counsel, Amanda Yonally, to file this Complaint against the American Mold

Experts, Inc. and American Mold Experts, Inc. Employee Health Benefit Plan, and

as cause therefore states as follows:

### I.  JURISDICTION AND VENUE

1.      This action arises under the Employee Retirement Income Security Act

of 1974 ("ERISA"), 29 U.S.C. §1001.  The Court has jurisdiction of this case

pursuant to 28 U.S.C. §1331, in that this action arises under the laws of the United

States.  Specifically, Mona Larrison brings this action to enforce her rights under

ERISA as authorized by 29 U.S.C. §1132.

2.      The Plaintiff, Mona Larrison, has at all times material hereto been a

citizen of the State of Indiana and a resident of Marion County.

3.      At all times material hereto, Mona Larrison was employed by American Mold Experts, Inc. and was provided healthcare coverage under an employee health benefit plan issued by her employer.

4.      Defendant American Mold Experts, Inc. Employee Health Benefit Plan (the "Plan") is a self-funded employee benefit plan located in Indianapolis, Indiana. The Plan promises to pay certain healthcare expenses for Plan participants.

5.      Defendant American Mold Experts, Inc. serves as both the Plan Sponsor and the Plan Administrator and is the named fiduciary of the Plan.

6.      The Plan refuses to pay healthcare benefits due under the Plan.

7.      American Mold Experts, Inc. is the payor of this claim.

8.      Venue in the Southern District of Indiana is appropriate by virtue of the American Mold Experts, Inc. Employee Health Benefit Plan being administered in this District.

## II. FACTUAL ALLEGATIONS

9.      Mona Larrison began her employment at American Mold Experts, Inc. ("AME") on June 28, 2012.

10.     Prior to the start of her employment, AME obtained healthcare coverage for its employees under the Plan effective January 1, 2012.  The Plan document explicitly identifies "American Mold Experts, Inc., President, or the President's designee" as the Plan Sponsor, Plan Administrator and Named

Fiduciary of the healthcare Plan. The Plan further identifies INDECS Corporation (INDECS) as the Claims Processor.

11.    A Client Service Agreement (CSA) entered into between INDECS and AME on January 20, 2012 states that the as the Plan Sponsor, AME assumed responsibility for the following:

> Furnishing SPDs (summary plan descriptions), arranging for all Plan Members to have computer access to the INDECS Website, communicating all Plan changes, notification of termination of coverage and notification of inadequate funding to plan participants, pursuant to the requirements of ERISA.

AME was also responsible for compliance with applicable state and federal laws and regulations. AME acknowledged in the CSA that it was the Plan Sponsor, Plan Administrator and named fiduciary with respect to the Plan. The CSA provided that INDECS' role would be limited to non-fiduciary services limited to processing claims for Plan benefits.

12.    On April 3, 2012, the final version of the Plan Document and Summary Plan Description (SPD) was completed and provided to AME for distribution to all participating members.

13.    The SPD and Plan Document contained an "Acknowledgment of Important Eligibility Information Receipt" on the last page to be signed by each employee enrolled under the Plan indicating that they received a copy of the SPD and that they understood and were aware of the eligibility provisions and the Plan's provisions regarding pre-existing conditions. The SPD receipt acknowledgement

was intended to provide conclusive evidence that the SPD was received, read and understood by the covered member.

14.     On September 28, 2012, more than five months after the final version of the Plan and SPD were provided to AME, AME's President, Julie Hurst, signed and adopted the Plan on behalf of AME. On the signature page, Ms. Hurst acknowledged that the Plan Document represented both the Plan Document and the Summary Plan Description for this particular Plan.

15.     On that same date, September 28, 2012, Mona Larrison attended a meeting with two other AME employees regarding their eligibility for healthcare coverage under the Plan. As of September 28th, Ms. Larrison had completed her 90 day eligibility period to be insured under the Plan. A service representative and broker for the Plan named Julie Shadinger was present at the meeting. Ms. Shadinger was neither an employee of AME nor an employee of INDECS.

16.     When completing her enrollment form for coverage under the Plan, Ms. Larrison – having recently been seen in the emergency room for suspected gallbladder disease – explicitly inquired on multiple occasions about any pre-existing clause that might limit her coverage under the Plan. She was told that her emergency room visit "would not be a problem," that she had "no pre-existing condition," and that any pre-existing condition limitation that may be present in the Plan would be limited to "something like cancer."

17.     When AME initially obtained coverage for its employees under the Plan in January 2012, employee folders with complete information about the Plan, including a welcome letter, schedule of benefits, website instructions, provider information, pharmacy instructions, claim forms, member request forms and privacy policy were compiled for distribution to Plan participants.

18.     Despite AME's possession of the Plan Document and SPD, as well as other pertinent information related to the Plan, no such information was made available to Ms. Larrison at the meeting on September 28, 2012.  Ms. Shadinger requested that form packets for each new enrollee to the Plan be completed in advance, but AME failed to provide any Plan documents in advance of the September 28th meeting.  Ms. Shadinger would later state in a memorandum that although she requested pertinent Plan information and documents from AME prior to the meeting, she did not receive any of the materials requested and was unable to distribute any Plan information other than a summary benefit sheet, which was copied at the meeting for those in attendance.

19.     When Ms. Larrison enrolled in the Plan on September 28, 2012, she did not receive a copy of the Plan or a Summary Plan Description. Ms. Larrison was promised that a welcome packet and Summary Plan Description would be forthcoming in the mail.

20.     Ms. Larrison's healthcare insurance became effective on October 1, 2012.

21.     Ms. Larrison received insurance cards shortly after her effective date of coverage on October 1, 2012, but she did not receive a copy of the Plan or the SPD.

22.     Ms. Larrison continued to request an insurance packet, including a copy of the Plan and SPD.  Ms. Larrison repeatedly asked for a copy of the Plan and additional information by email and through telephone calls in October, November and December of 2012.

23.     By the end of December 2012, Ms. Larrison still had not received any information pertaining to the Plan other than insurance cards and the abbreviated schedule of benefits handed out to her on September 28, 2012.  AME, the Plan Administrator and Plan Sponsor, did not provide Ms. Larrison with a copy of the Plan or the SPD, despite her repeated requests for these documents.

24.     In February of 2013, Ms. Larrison finally received a copy of the Plan and SPD from INDECS, the Plan's claim processor, after numerous bills for medical treatment were denied under the Plan.

25.     On May 20, 2013, Ms. Larrison submitted an appeal of the denied medical and surgical claims.

26.     On June 20, 2013, INDECS provided a response to Ms. Larrison's appeal.  With regard to AME's refusal to provide Ms. Larrison with a copy of the Plan and SPD within a reasonable time frame, INDECS stated that it was unable to respond to those issues raised in Ms. Larrison's appeal, as they involve facts that

are not within INDECS' knowledge or control. INDECS provided AME with a full copy of Ms. Larrison's appeal and a copy of INDECS' response, stating "Certainly, as the Plan Sponsor and Plan Administrator, as defined by ERISA, American Mold Experts, Inc. is required to answer those questions in your appeal that INDECS is unable to answer.  We are requesting the Company respond directly to you in that regard."

27.     To date, AME has refused to respond to Ms. Larrison's appeal or INDECS' request for a response from AME.

28.     As a result of AME's refusal to provide Ms. Larrison with a copy of the Plan and SPD, Ms. Larrison incurred substantial medical bills between October 1, 2012 and January 21, 2013.  Ms. Larrison would not have incurred these charges had she not been mislead by the Plan Administrator with regard to the terms of the Plan and had she been provided with a copy of the Plan and SPD as she requested. Accordingly, Ms. Larrison has sustained serious financial damages.

**Mona Larrison's Medical and Benefit History Under the Plan**

29.     On September 7, 2012, Ms. Larrison presented to Hendricks Regional Health Emergency Department for upper left abdominal pain and nausea. Ms. Larrison was not seen by a physician at the emergency department; rather, she was evaluated by a nurse practitioner and/or physician assistant due to the non-serious nature of her visit.  Ms. Larrison was discharged from the emergency department

within two hours with a printout for suspected gallbladder disease, a prescription for pain medication and a referral to a general surgeon.

30.    On September 19, 2013, Ms. Larrison followed up with the general surgeon, who felt that gallbladder disease was unlikely and referred her to Dr. Thomas Gross, a gastroenterologist, for suspected gastroesophageal reflux disease (GERD).

31.    Ms. Larrison's healthcare insurance became effective on October 1, 2012.

32.    On October 13, 2012, Ms. Larrison saw Dr. Gross.  Dr. Gross recommended that she undergo a colonoscopy and an Esophagogastroduodenoscopy (EGD).

33.    On October 16, 2012, Ms. Larrison underwent a CT scan of her abdomen.  Prior to the CT scan, Ms. Larrison's providers requested and received precertification from the number provided on the back of Ms. Larrison's insurance card.

34.    On October 18, 2012, Ms. Larrison underwent a colonoscopy and an EGD.  Neither a colonoscopy nor an EGD constitutes a diagnostic test, care or treatment for gallbladder disease. Prior to the procedures, Ms. Larrison's providers again requested and received precertification from the number provided on the back of Ms. Larrison's insurance card.

35.     On November 1, 2012, Ms. Larrison underwent an electrocardiogram (EKG).  The EKG was not a diagnostic test, care or treatment for gallbladder disease.  Prior to the procedure, Ms. Larrison's providers again requested and received precertification from the number provided on the back of Ms. Larrison's insurance card.

36.     On November 2, 2012, Ms. Larrison had her gallbladder removed by Dr. Bruce Inman.  Prior to the procedure, Dr. Inman requested and received precertification from the number provided on the back of Ms. Larrison's insurance card.

37.     Following her gallbladder removal, Ms. Larrison's health did not improve.

38.     Ms. Larrison presented to the IU Health Gastroenterology Department on November 27, 2012 for an upper endoscopic ultrasound (EUS), which revealed abnormality of the biliary system.  The EUS was performed by Dr. Julie Leblanc.

39.     Ms. Larrison was diagnosed with sphincter of Oddi dysfunction.  Ms. Larrison was referred for an Endoscopic Retrograde Cholangiopancreatography (ERCP) at IU Health.  An ERCP is a procedure used to identify stones, tumors or narrowing in the bile ducts and pancreas.

40.     On December 5, 2012, Ms. Larrison underwent the ERCP under general anesthesia with a biliary sphincterotomy and stent placement in the ventral pancreatic duct.  The ERCP was performed on an out-patient basis by Dr. Gregory

Cote. Prior to the procedure, Dr. Cote requested and received precertification from the number provided on the back of Ms. Larrison's insurance card.

41. The following day on December 6, 2012, Ms. Larrison presented to the emergency department and was subsequently diagnosed with post-ERCP pancreatitis requiring hospitalization through December 8, 2012. Again, Ms. Larrison's provider requested and received precertification from the number provided on the back of Ms. Larrison's insurance card.

42. On December 22, 2012, Ms. Larrison followed up at Hendricks Regional Hospital for an x-ray for assessment of the stint placed in her pancreatic duct.

43. Ms. Larrison followed up with her primary care physician, Dr. Ludmila Trammell, on February 25, 2013 and followed up with Dr. Cote on April 4, 2013.

44. Ms. Larrison's medical bills incurred after her effective date of coverage on October 1, 2012 were submitted for payment to INDECS, the claims administrator for the Plan. INDECS applied at least two medical charges incurred as a result of treatment from Dr. Gross and Dr. Cote to Ms. Larrison's deductible. However, the remainder of charges incurred between her effective date of coverage on October 1, 2012 and early 2013 were denied on the basis that the treatment and services were related to a pre-existing condition.

45. The Plan defines "Pre-Existing Condition" as follows:

> Pre-Existing Condition is a condition for which medical advice, diagnosis, care or treatment was recommended or received within six months prior to the person's Enrollment Date under this Plan. Genetic

10

Information is not, by itself, a condition. Treatment includes receiving services and supplies, consultations, diagnostic tests or prescribed medicines. In order to be taken into account, the medical advice, diagnosis, care or treatment must have been recommended by, or received from, a Physician.

Covered Charges incurred under the Plan for Pre-Existing Conditions are not payable unless incurred 12 consecutive months (18 months if a Late Enrollee) after a person's Enrollment Date. This time, known as the Pre-Existing Conditions Limitation period, may be offset if the person has Creditable Coverage from his or her previous plan.

46.     Ms. Larrison did not have creditable coverage from a prior healthcare plan.

47.     When Ms. Larrison presented to the emergency department on September 7, 2012 for nausea and abdominal pain, she did not receive medical advice, diagnosis, care or treatment from a physician. Accordingly, the consultation at the Hendricks Regional Health emergency department cannot, according to the explicit plan language, be taken into account to limit or deny coverage for subsequent treatment under the Plan's Pre-Existing Condition provision.

48.     On May 20, 2013, Ms. Larrison submitted an appeal of her medical/surgical claim denials to INDECS. On June 20, 2013, INDECS advised Ms. Larrison that all of her claims through December 31, 2012 were incurred within the Plan's Pre-Existing Exclusion period and that her claims remained denied.

49.     Ms. Larrison has provided the Defendants with proof that claims incurred after her effective date of insurance are eligible for coverage and should be

paid.  Despite this proof, the Defendants refuse to pay Ms. Larrison's outstanding medical bills.

## III. CLAIMS FOR RELIEF

### WRONGFUL DENIAL OF EMPLOYEE BENEFITS

50.     Paragraphs 1-49 are hereby realleged and incorporated herein by reference.

51.     29 U.S.C. §1132(a)(1)(B) provides that as a participant in the Plan, the Plaintiff may bring a civil action to recover benefits due to her under the terms of the Plan.

52.     Ms. Larrison provided the Defendants with ample evidence to verify that she is eligible for certain healthcare benefits under Plan.

53.     The Defendants have wrongfully denied Ms. Larrison's medical claims in violation of the Plan and ERISA.

54.     As a result of the denial of benefits, Ms. Larrison has suffered and continues to suffer from serious financial and emotional distress.

### BREACH OF FIDUCIARY DUTY

55.     Paragraphs 1-54 are hereby realleged and incorporated herein by reference.

56.     29 U.S.C. §1132(a)(3)(B) provides that as a participant in the Plan, the Plaintiff may bring a civil action to obtain other appropriate equitable relief to

redress violations of parts of ERISA or the terms of the Plan.  Equitable relief may

include compensation for a loss resulting from a breach of fiduciary duty.

57.     The Defendant American Mold Experts, Inc., among other duties, owed

a fiduciary duty to the Plaintiff to administer the Plan in accordance with ERISA

and in a manner that was consistent with the terms of the Plan.

58.     The Defendant AME breached its fiduciary duties by refusing to

respond to the Plaintiff's repeated requests for information pertaining to the Plan,

failing to furnish the Plan document and Summary Plan Description to the

Plaintiff, providing the Plaintiff with misleading Plan information, failing to comply

with applicable federal laws and regulations, wrongfully denying the Plaintiff's

medical benefits, failing to follow the terms of the Plan and failing to act in the best

interests of Mona Larrison, among other breaches of fiduciary duties.

59.     As a direct and proximate result of the Defendants' breach of their

fiduciary duties and trust, the Plaintiff has suffered damages.

FAILURE TO PRODUCE DOCUMENTS

60.     Paragraphs 1-59 are hereby realleged and incorporated herein by

reference.

61.     AME serves as both the Plan Sponsor and Plan Administrator of the

Plan.

62.     29 U.S.C. §1132(c)(1) provides that an administrator who fails or

refuses to comply with a request for information from a plan participant, by mailing

the documents within 30 days after such request, may in the court's discretion be

personally liable to such participant or beneficiary for up to $110.00 per day penalty

from the date of such failure or refusal, and the court may in its discretion order

such other relief as it deems proper. Moreover, each violation with respect to any

single participant or beneficiary shall be treated as a separate violation.

63.    The U.S. Department of Labor regulations governing ERISA claims

specifically provide that "a claimant shall be provided, upon request and free of

charge, reasonable access to, and copies of, all documents, records, and other

information relevant to the claimant's claim for benefits. Whether a document,

record, or other information is relevant to a claim for benefits shall be determined

by reference to paragraph (m)(8) of this section." 29 C.F.R. §2560.503.1(h)(2)(iii).

64.    29 C.F.R. §2560.503.1(m)(8) provides as follows:

> A document, record, or other information shall be
> considered "relevant" to a claimant's claim if such
> document, record, or other information
> (i)     Was relied upon in making a benefit determination;
> (ii)    Was submitted, considered, or generated in the
>         course of making the benefit determination,
>         without regard to whether such document, record,
>         or other information was relied upon in making the
>         benefit determination;
> (iii)   Demonstrates compliance with the administrative
>         processes and safeguards required pursuant to
>         paragraph (b)(5) of this section in making the
>         benefit determination; or
> (iv)    In the case of a group health plan or plan providing
>         disability benefits, constitutes a statement of policy
>         or guidance with respect to the plan concerning the
>         denied treatment option or benefit for the
>         claimant's diagnosis, without regard to whether

> such advice or statement was relied upon in
> making the benefit determination.

65.     Mona Larrison made numerous written requests to the Plan

Administrator for a copy of the Plan and Summary Plan Description. AME refused

to provide Ms. Larrison with a copy of the Plan and SPD.

66.     On June 20, 2013, INDECS copied the Plan Administrator on its

response to the Plaintiff's appeal and requested that the Defendants address issues

raised in the Plaintiff's appeal by responding directly to the Plaintiff. The Plan

Administrator provided no response to this request.

67.     On September 6, 2013, Ms. Larrison, through the undersigned counsel,

sent a request to the Plan Administrator via certified mail for all documents and

information relevant to Ms. Larrison's claim for healthcare coverage, including a

copy of Ms. Larrison's claim file and a copy of the Plan and SPD.

68.     On September 16, 2013, Julie Hurst, AME's President, responded to

the request, claiming, "I have no knowledge of, files or information as we have no

claim file and are not the physical plan administrator." Ms. Hurst claimed in her

letter that INDECS is the Plan Administrator. Ms. Hurst, the actual Plan

Administrator, provided no documents in response to the Plaintiff's request.

69.     On September 23, 2013, Ms. Larrison, through the undersigned

counsel, sent a second letter to Julie Hurst, advising her that AME is the Plan

Administrator and again requesting that she provide Ms. Larrison with a complete

copy of her claim file and other pertinent documents.

70.     To date, AME has refused to respond to the Plaintiff's requests and has provided no documents to Ms. Larrison.

71.     The Defendants have failed to produce a single document relative to the Plaintiff's claim for healthcare benefits.  Under 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2560.503.1(h)(2)(iii), Defendants are now liable to the Plaintiff for up to $110.00 per day beginning on Ms. Larrison's effective date of insurance on October 1, 2012.

WHEREFORE, the Plaintiff, Mona Larrison, requests that this Honorable Court enter judgment against the Defendants:

A.  Finding that Mona Larrison is entitled to compensation for the unpaid medical bills.

B.  Finding that Mona Larrison is entitled to compensation for losses resulting from the Plan Administrator and trustee's breach of fiduciary duties.

C.  Finding that the Defendants are liable to the Plaintiff for a statutory penalty for failure or refusal to comply with requests for information pertaining to the Plan.

D.  Awarding the Plaintiff interest on the amount of unpaid medical bills.

E.  Awarding the Plaintiff reasonable reimbursement for attorney fees and expenses incurred as a result of the Defendants' wrongful denial of healthcare benefits and breach of fiduciary duties.

F.  Awarding all other relief as may be just and appropriate.

Respectfully Submitted:

**YONALLY LAW OFFICE**

s/ Amanda L. Yonally
Amanda L. Yonally (#25890-49)
Yonally Law Office
425 N. High Street, Ste. 3
Muncie, IN  47305
Phone: (765) 289-4000
Fax: (765) 289-2324
amanda@yonallylaw.com